IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

APR - 2 2013

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk

**DEMETRIUS NICKENS**
   PLAINTIFF

Vs.

**EQUIFAX INFORMATION SERVICES LLC, ET AL**
   DEFENDANT

Civil **1-13-CV-0333**

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### FACTUAL ALLEGATIONS

On or about May 2007, Plaintiff opened an account with defendant HSBC. Despite Plaintiff's good efforts the account went delinquent and HSBC transferred the account for collections. On or around January of 2010, Plaintiff began receiving correspondence from West Asset Management regarding Plaintiff's being deceased and that they were filing a claim against the Plaintiff's estate.

Subsequently, Plaintiff starting receiving decline letters from creditors indicating that Plaintiff was deceased. On February 12, 2010, Plaintiff disputed the HSBC debt with Defendant Equifax. On March 20, 2010, Defendant Equifax responded indicating that the account a reported (i.e. Deceased) was correct.

Plaintiff subsequently initiated legal proceedings against the Defendant Equifax. The deceased status was subsequently removed from Plaintiff's credit Report in July 2010, after the undersigned and Equifax resolved the matter outside of Court.

Plaintiff's subscribes to a service through creditreport.com, where he can access all three of his credit reports for a minimal amount. In October 2012, when Plaintiff would order his three-bureau credit report, he noticed that Equifax did not have a credit score. Plaintiff found this strange, but had no indication that he was now being reported as deceased.

On January 3, 2013, Plaintiff applied for an American Signature Credit Card through Comentiy Bank. On January 22, 2013, Plaintiff received a notice declination of credit, the sole basis that Equifax had reported Plaintiff as deceased. On January 27, 2013, Plaintiff reordered his credit report through Equifax at which time he noted that Defendant HSBC was re-reporting him as deceased, although they noted that this information was disputed.

Plaintiff's had disputed information on his credit report on November 2012, and HSBC did note that Plaintiff dispute trade line on his credit report. Despite the fact that HSBC knew or had good reason to know that Plaintiff was not deceased, the re-reported the information, mainly to cause Plaintiff not to be able to obtain credit.

After being served with the Complaint, HSBC sent Plaintiff a letter dated February 5, 2013, refusing to remove the deceased remark, until Plaintiff went to the Social Security Administration and received a notice from them indicating that Plaintiff was not deceased. Despite, the fact that the Defendant HSBC was aware that it was it's duty to prove what they report to the credit bureau, they attempt to abrogate responsibility to the Plaintiff.

Despite prior litigation and without verifying that the information being reported was true, Defendants' Equifax and HSBC allowed the false and misleading information to remain on Plaintiff's credit report.

Defendants' have been reporting derogatory and inaccurate statements and information relating to Plaintiff and Plaintiff's credit history to third parties (hereafter the "inaccurate information").

The inaccurate information includes, but is not limited , That Plaintiff is deceased.

The inaccurate information negatively reflects upon the Plaintiff, Plaintiff's credit repayment history, Plaintiff's financial responsibility as a debtor and Plaintiff's credit worthiness. The inaccurate information consists of a statement that the plaintiff is deceased which has effected Plaintiff's credit score.

Defendants' have been reporting the inaccurate information through the issuance of false and inaccurate credit information and consumer credit reports that

it has disseminated to various persons and credit grantors, both known and unknown.

Plaintiff has applied for and has been denied various loans and extensions of consumer credit on many different occasions, and Plaintiff has been informed that the basis for these denials was the inaccurate information that appears on Plaintiff's credit reports and that the inaccurate information was a substantial factor for those denials.

Plaintiff's credit reports and file have been obtained from Defendants' and have been reviewed many times by prospective and existing credit grantors and extenders of credit, and the inaccurate information has been a substantial factor in precluding Plaintiff from receiving many different credit offers and opportunities, known and unknown, and from receiving the most favorable terms in financing and interest rates for credit offers that were ultimately made.

As a result of Defendants' conduct, Plaintiff has suffered actual damages and serious financial and pecuniary harm arising from monetary losses relating to credit denials, loss of use of funds, loss of credit and loan opportunities, excessive and/or elevated interest rate and finance charges, out-of-pocket expenses including, but not limited to, local or long distance telephone calls, postage, faxing and other related costs, all of which will continue into the future to Plaintiff's great detriment and loss.

As a result of Defendants' conduct, Plaintiff has suffered great physical,

emotional and mental pain and anguish, and Plaintiff will continue to suffer the same for an indefinite time in the future, all to Plaintiff's great detriment and loss. As a result of Defendants' conduct, Plaintiff has suffered actual damages in the form of financial and dignitary harm arising from the injury to credit rating and reputation, and Plaintiff will continue to suffer the same for an indefinite time in the future, all to Plaintiff's great detriment and loss. As a result of Defendants' conduct, Plaintiff has suffered a decreased credit score as a result of being reported as deceased.

At all times pertinent hereto, Defendants' were acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants' herein.

At all times pertinent hereto, the conduct of the Defendants' as well as that of its agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of the Plaintiff herein.

## **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56(c), a moving party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See *Celotex Corp v. Catrett*,

477 U.S. 317, 322 (1986); Burger King Corp. v. E-Z Eating 41 Corp., 72 F.3d 1306, 1313 (11th Cir. 2009). The party seeking summary judgment "bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (internal quotations omitted).

Once the moving party meets this initial burden, however, the non-moving party must present "significant, probative evidence demonstrating the existence of a triable issue of fact." Chanel, Inc. v. Italian Activewear of Fla., Inc., 931 F.2d 1472, 1477 (11th Cir. 1991). If the non-moving party fails to show that a genuine issue remains for trial, then the moving party is entitled to summary judgment. United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991).

## ARGUMENT

### I. The Defendant HSBC Waived its Rights To Pursue Arbitration

A party may be found to have waived its right to arbitration if it: "(1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts." Ritzel Communications v. Mid-AM. Cellular TEL. Code., 989 F2d 966, 969.

A party acts inconsistently with its right to arbitrate if the party "substantially invoke(s) the litigation and machinery before asserting its arbitration rights." Ritzel,

7

989 F2d at 969. A party substantially invokes the litigation machinery when, for example, it files a lawsuit on arbitrable claims, engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely manner. Stifel, Nicolaus and Company, Inc. v. Freeman, 924 F2d 157, 158 (8th Cir. 1991).

Unlike the cases cited above, the Defendant agreed in prior litigation to waive its right to arbitrate claims. On December 30, 2010, the Defendant executed a settlement agreement of a public class action lawsuit wherein it was being sued for alleged unconceivable arbitration practices. (Exhibit A). The settlement in pertinent part stated:

> 1. HSBC will remove all terms and conditions requiring the arbitration of disputes (an "Arbitration Clause") and waiving the right to bring class action lawsuits (a "Class Action Waiver Clause") from its general purpose consumer credit card agreements by mailing new agreements or change in terms notices ("Mailings") to all of its general purpose consumer credit card holders. Such Mailings will be substantially completed within sixty (60) days following March 31, 2010. HSBC will not restore or otherwise insert into its consumer credit card agreements either an Arbitration Clause or a Class Action Waiver Clause within three and one half (3.5) years following March 31, 2010; *provided*, however, that if HSBC fails to substantially complete the required Mailings within 60 days of March 31, 2010, the Settlement will remain effective, but the three and one half year period shall be extended by the same amount of time by which HSBC is late in substantially completing the Mailings.

The United States District Court for the Southern District of New York approved the settlement agreement. (Exhibit B)

Despite knowing that it waived the right to pursue Arbitration against its cardholders, the Defendant and its nationwide counsel, have being filing Motion's to Compel Arbitration across the county in violation of this settlement agreement. (Exhibit C)

8

On February 25, 2013, the Defendant through counsel filed a Motion to Dismiss Plaintiff's case. In said Motion, the Defendant's Counsel stated that they were not waiving their right to pursue Arbitration. It was at that point that Plaintiff began researching the potential for arbitration, and discovered several news reports about the settlement. Plaintiff further researched revealed a copy of the settlement agreement as annexed to this motion. Despite the agreement, the Defendant sough to preserve the issue of the arbitration agreement so that would argue in bad faith later in the litigation that Plaintiff had agreed to arbitrate is claims. It is important to note that the Defendant's initial Motion to Dismiss was never mailed to Plaintiff. This was trickery ands deceit at its best. The Defendant contends that it was mailed, but even as of this writing Plaintiff never received. It is this type of petty litigation that gives the Plaintiff pause and is why he seeks the Court to enter judgment finding that any Arbitration Agreement is unenforceable and invalid and cannot be used as defense in this case. Plaintiff incorporates his statement of undisputed facts as if herein restated.

## CONCLUSION

Plaintiff respectfully request that judgment be issued in his favor over the issue of Arbitration.

## CERTIFICATE OF COMPLIANCE

9

Pursuant to Local R. 7.1(D), this is to certify that the foregoing complies with the font and point setting approved by the Court in Local R. 5.1(B). The foregoing COMPLAINT was prepared on a computer, using Times New Roman 14 point font.

Respectfully Submitted,

*[signature]*

**DEMETRIUS NICKENS**
**AS HIS OWN ATTORNEY**
**SUI JURIS**

PO Box 931292
Norcross, Georgia 30003
404-952-7230
dcnickens@comcast.net
PLAINTIFF

10

## **CERTIFICATE OF SERVICE**

I hereby certify that I mailed foregoing Motion for Partial Summary Judgment on **March 27TH, 2013**. The CM/ECF system will automatically send email notification of such filing to the following attorneys of record:

**Barry Goheen, Esquire**
KING & SPALDING
1180 Peachtree Street, N.E.
Atlanta, GA 30309-3521
*Via Courts Electronic Noticing Service*
**Counsel for Defendant Equifax**

**Alan D. Leeth, Esquire**
BURR & FORMAN, LLP-ATL
171 17th Street, NW
Suite 1100
Atlanta, GA 30363
*Via Courts Electronic Noticing Service*
**Counsel for Defendant HSBC**

_[signature]_
DEMETRIUS NICKENS
PLAINTIFF
*Sui Juris*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

**DEMETRIUS NICKENS**
    PLAINTIFF

Vs.

    Civil **1-13-CV-0333**

**EQUIFAX INFORMATION SERVICES LLC, ET AL**
    DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \* \*

ORDER

Upon consideration of the Plaintiff's Motion for Partial Summary Judgment regarding the issue of Arbitration, it appearing that no facts are in dispute, it is hereby this ____day of _____, 2013, ORDERED, that the Motion is GRANTED, it is further ORDERED, that the Defendant HSBC is prohibited for seeking to compel arbitration or using it as an affirmative defense in these proceedings.

_____
JUDGE

12