IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

APR 2 4 2013

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

**DEMETRIUS NICKENS**
  PLAINTIFF
Vs.

Civil 1-13-CV-0333

**EQUIFAX INFORMATION SERVICES LLC, ET AL**
  DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \* \*

## REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

Plaintiff Demetrius Nickens, files this Reply to Defendants' Response to Plaintiff's Motion for Leave to File Third Amended Complaint. In support thereof, state:

### FACTUAL ALLEGATIONS

On or about May 2007, Plaintiff opened an account with defendant HSBC. Despite Plaintiff's good efforts the account went delinquent and HSBC transferred the account for collections. On or around January of 2010, Plaintiff began receiving correspondence from West Asset Management regarding Plaintiff's being deceased and that they were filing a claim against the Plaintiff's estate.

Subsequently, Plaintiff starting receiving decline letters from creditors indicating that Plaintiff was deceased. On February 12, 2010, Plaintiff disputed the

1

HSBC debt with Defendant Equifax. On March 20, 2010, Defendant Equifax responded indicating that the account a reported (i.e. Deceased) was correct.

Plaintiff subsequently initiated legal proceedings against the Defendant Equifax. The deceased status was subsequently removed from Plaintiff's credit Report in July 2010, after the undersigned and Equifax resolved the matter outside of Court.

Plaintiff's subscribes to a service through creditreport.com, where he can access all three of his credit reports for a minimal amount. In October 2012, when Plaintiff would order his three-bureau credit report, he noticed that Equifax did not have a credit score. Plaintiff found this strange, but had no indication that he was now being reported as deceased.

On January 3, 2013, Plaintiff applied for an American Signature Credit Card through Comentiy Bank. On January 22, 2013, Plaintiff received a notice declination of credit, the sole basis that Equifax had reported Plaintiff as deceased. On January 27, 2013, Plaintiff reordered his credit report through Equifax at which time he noted that Defendant HSBC was re-reporting him as deceased, although they noted that this information was disputed.

Plaintiff's had disputed information on his credit report on November 2012, and HSBC did note that Plaintiff dispute trade line on his credit report. Despite the fact that HSBC knew or had good reason to know that Plaintiff was not deceased,

2

the re-reported the information, mainly to cause Plaintiff not to be able to obtain credit.

After being served with the Complaint, HSBC sent Plaintiff a letter dated February 5, 2013, refusing to remove the deceased remark, until Plaintiff went to the Social Security Administration and received a notice from them indicating that Plaintiff was not deceased. Despite, the fact that the Defendant HSBC was aware that it was it's duty to prove what they report to the credit bureau, they attempt to abrogate responsibility to the Plaintiff.

Despite prior litigation and without verifying that the information being reported was true, Defendants' Equifax and HSBC allowed the false and misleading information to remain on Plaintiff's credit report.

Defendants' have been reporting derogatory and inaccurate statements and information relating to Plaintiff and Plaintiff's credit history to third parties (hereafter the "inaccurate information").

The inaccurate information includes, but is not limited , That Plaintiff is deceased.

The inaccurate information negatively reflects upon the Plaintiff, Plaintiff's credit repayment history, Plaintiff's financial responsibility as a debtor and Plaintiff's credit worthiness. The inaccurate information consists of a statement that the plaintiff is deceased which has effected Plaintiff's credit score.

Defendants' have been reporting the inaccurate information through the issuance of false and inaccurate credit information and consumer credit reports that it has disseminated to various persons and credit grantors, both known and unknown.

Plaintiff has applied for and has been denied various loans and extensions of consumer credit on many different occasions, and Plaintiff has been informed that the basis for these denials was the inaccurate information that appears on Plaintiff's credit reports and that the inaccurate information was a substantial factor for those denials.

Plaintiff's credit reports and file have been obtained from Defendants' and have been reviewed many times by prospective and existing credit grantors and extenders of credit, and the inaccurate information has been a substantial factor in precluding Plaintiff from receiving many different credit offers and opportunities, known and unknown, and from receiving the most favorable terms in financing and interest rates for credit offers that were ultimately made.

As a result of Defendants' conduct, Plaintiff has suffered actual damages and serious financial and pecuniary harm arising from monetary losses relating to credit denials, loss of use of funds, loss of credit and loan opportunities, excessive and/or elevated interest rate and finance charges, out-of-pocket expenses including, but not limited to, local or long distance telephone calls, postage, faxing and other related

4

costs, all of which will continue into the future to Plaintiff's great detriment and loss.

As a result of Defendants' conduct, Plaintiff has suffered great physical, emotional and mental pain and anguish, and Plaintiff will continue to suffer the same for an indefinite time in the future, all to Plaintiff's great detriment and loss. As a result of Defendants' conduct, Plaintiff has suffered actual damages in the form of financial and dignitary harm arising from the injury to credit rating and reputation, and Plaintiff will continue to suffer the same for an indefinite time in the future, all to Plaintiff's great detriment and loss. As a result of Defendants' conduct, Plaintiff has suffered a decreased credit score as a result of being reported as deceased.

At all times pertinent hereto, Defendants' were acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants' herein.

At all times pertinent hereto, the conduct of the Defendants' as well as that of its agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of the Plaintiff herein.

## **MOTION TO DISMISS STANDARD**

5

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. Prior to the Supreme Court's decision in <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955 (2007), a motion to dismiss could only be granted if a plaintiff could prove "no set of facts . . . which would entitle him to relief." See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also <u>Hishon v.King & Spalding</u>, 467 U.S. 69, 73 (1984); <u>Wright v. Newsome,</u> 795 F.2d 964, 967 (11th Cir.1986). Now, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v.Iqba</u>l, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)); <u>Sinaltrainal v. Coca-Cola Co.,</u> 578 F.3d 1252, 1268 (11th Cir.2009). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, --- U.S. ----, 129 S. Ct. at 1949. A complaint does not state a facially plausible claim for relief if it shows only "a sheer possibility that the defendant acted unlawfully." Id. While a complaint need not contain detailed factual allegations to survive a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), "[a]pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. (quotation marks and citations omitted). Absent the necessary factual allegations, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. Id. In considering a defendant's motion to dismiss, a district court will accept as true all

6

well-pleaded factual allegations and view them in a light most favorable to the plaintiff. See *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057(11th Cir. 2007*). Accord, Nelson v. Campbell*, 541 U.S. 637, 640 (2004) (where a court is considering dismissal of a complaint at the pleading stage, it must assume the allegations of the complaint are true).

## STANDARD OF MOTION TO AMEND COMPLAINT

In the absence of sufficient reason compelling denial, the law compels courts to grant a plaintiff's motion for leave to amend a complaint. *See Foman v. Davis*, 371 U. S. 178, 182 (1962)(Supreme Court holding that in the absence of sufficient reason for denying leave to amend, such as undue delay, bad faith, or the movant's dilatory motive, leave to amend should be granted); *see* also *Bryant v. Dupree*, 252 F.3d 1161, 1163-65 (11th Cir. 2001).

*In Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001), the court noted that a District Court's discretion to dismiss a complaint without leave to amend is "'severely restrict[ed]' by Fed. Rule Civ. P. 15(a), which directs that leave to amend 'shall be freely given when justice so requires.'" Id. At 1163 (quoting *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988) (citation omitted). The Eleventh Circuit noted that amending the case previously is no reason for refusing to allow a plaintiff to amend a complaint.

7

## A. THE PLAINTIFF STATE LAW CLAIMS ARE NOT PREEMPTED BECAUSE THE DEFENDANTS' CONDUCT WAS WILLFUL, MALICIOUS AND WITH RECKLESS DISREGARD

The Defendants' argue that Plaintiff's claims under Georgia's Fair Business Act (GFBA) is preempted by the Fair Credit Reporting Act. Defendants' argument fails because Plaintiff has alleged that that the Defendant conduct was malicious, intentional, willful, reckless, and in grossly negligent disregard. *Third Amended Complaint ¶33*

Plaintiff alleges that Defendants have violated Georgia's Fair Business Practices Act through the "use of unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade and commerce." Cmplt., ¶ 75.

Defendants argue that Plaintiff's Fair Business Practices Act claim is preempted by the Federal Fair Credit Reporting Act. The Fair Credit Reporting Act has two preemption provisions, 15 U.S.C. § 1681h(e) and § 1681t(b)(1)(F). Section 1681(b)(1)(F) states that "[n]o requirement or prohibition may be imposed under the laws of any State with respect to subject matter related under . . . section 623 relating to the responsibilities of person who furnishes information to consumer reporting agencies.

Section 1681h(e) states "no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against . . . any person who furnishes information to a

8

credit reporting agency . . . except as to false information furnished with **malice or willful intent to injure** such consumer.

Plaintiff has alleged in his Third Amended Complaint that the Defendants' conduct was malicious with willful intent to injure him. In considering a defendant's motion to dismiss, a district court will accept as true all well-pleaded factual allegations and **view them in a light most favorable to the plaintiff**. See *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057(11th Cir. 2007*). Accord, Nelson v. Campbell*, 541 U.S. 637, 640 (2004) (where a court is considering dismissal of a complaint at the pleading stage, it must assume the allegations of the complaint are true).

Plaintiff alleged in his Complaint that he notified Defendant Equifax that he was not deceased. After prior litigation with Equifax over the matter, Equifax informed Defendant HSBC that the Plaintiff was not deceased and HSBC removed the inaccurate and false information from plaintiff's credit report. Despite the prior litigation and with full knowledge that Plaintiff was not deceased, Defendants re-reported the information without verification and their conduct was willful, malicious and reckless to say the least. To argue at this juncture to the contrary, is nothing more that purposeful hyperbole and abstruse legal reasoning.

The word `willfully' is sometimes said to be a `word of many meanings' whose construction is often dependent on the context in which it appears." *Bryan v. United States*, ___ U.S. ___, *118 S.Ct. 1939, 1944, 141 L.Ed.2d 197 (1998)*

(citations omitted). In law, the traditional rule is that "ignorance of the law is no excuse," and a requirement of willfulness will only be read to require specific knowledge of the law in limited exceptions for highly technical statutes that otherwise pose a danger of ensnaring individuals engaged in apparently innocent conduct. Id. 118 S.Ct. at 1946 (contrasting specific knowledge requirement for highly technical, criminal tax laws with the otherwise general presumption that specific knowledge is not required for finding of willfulness). Still, in these criminal cases, a finding of willfulness required at least some showing that defendant knew that his actions were wrong.

Courts, when choosing to elaborate, have found that willfulness in the civil context, including under the FCRA, may also be demonstrated by a showing of a defendant's reckless disregard for its responsibilities under the act. Subsequent to its decision in *Philbin* the Third Circuit held that a FCRA plaintiff could be awarded punitive damages pursuant to § 1681n if she could prove that the defendant "adopted its reinvestigation policy either knowing that policy to be in contravention of the rights possessed by consumers pursuant to the FCRA or in reckless disregard of whether the policy contravened those rights." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 227 (3rd Cir.1997). Most "reckless disregard" FCRA cases have borrowed the legal standard used in the law of defamation because the cases involved allegations of willful dissemination of false credit information. See, e.g., *Yeager v. TRW*, 984 F.Supp. 517, 523 (S.D.Tex.1997). This Court should find as a compelling

standard of law that individuals who recklessly disregard any of their important responsibilities under the FCRA may be liable for punitive damages pursuant to 15 U.S.C. § 1681n. Congress did not intend to enable mass-users of credit reports to evade meaningful liability for repeated violations of their "grave responsibilities" under the FCRA by sticking their heads in the sand and pleading ignorance of the law.

Plaintiff has alleged in his Third Amended Complaint, that the Defendants' re-reporting of the inaccurate and defamatory information was not simple error, but was willful and malicious.

### B. PLAINTIFF CLAIMS UNDER THE FBPA ARE OF PUBLIC CONCERN

Well-settled Georgia law defines the scope of the FBPA: "If the public consumer interest would be served, one instance of an unfair or deceptive act or practice is a sufficient basis for a claim under the FBPA." *Marrale v. Gwinnett Place Ford*, 609 S.E.2d 659, 665 (Ga. Ct. App. 2005). Although the FBPA "does not encompass suits based upon allegedly deceptive or unfair acts or practices which occur in an essentially private transaction," *Zeeman v. Black*, 273 S.E.2d 910, 914 (Ga. Ct. App. 1980), Georgia courts have defined these essentially private transactions narrowly.

*In Re*: 1st Nationwide Collection Agency, Inc. v. Werner, 654 S.E.2d 428 (Ga. Ct. App. 2007) The Court opined that:

11

The consumer credit industry is one of the largest financial sectors of the U.S. economy and heavily impacts the market place by affecting the general public's ability to obtain goods and services. Misrepresenting consumers' financial indebtedness to others or **falsely reporting consumers' credit histories** has a **potential adverse effect on the consumer marketplace and the economy** in general. As such, collecting a debt incurred during a consumer transaction could harm the general consuming public if conducted via deceptive acts or practices and clearly falls within the parameters of the FBPA

The FBPA is to be interpreted in accordance with the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1). O.C.G.A. § 10-1-391(b). "For purpose of the exercise by the Commission of its functions and powers under the Federal Trade Commission Act. Suffice it to say, that base on the Court's holding in 1st Nationwide, it is clear that the Defendants' reporting inaccurate information on the credit report is of public concern and therefore Defendants' arguments in this regard fail on its face. Plaintiff has stated sufficient facts in his Complaint where any reasonable jury could infer that the Defendant's violated the FBPA.

Congress enacted the FCRA, it recognized that the banking system is dependent upon fair and accurate credit reporting which is completed in large part by consumer reporting agencies. 15 U.S.C. § 1681(a). Consequently, it established an elaborate regulatory structure intended to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable. 15 U.S.C. § 1681(b).

In addition, Congress devised a regulatory structure which imposes duties upon commercial entities which furnish information to credit reporting agencies. These duties are set out in 15 U.S.C.§ 1681s-2. Generally speaking, the duties require furnishers of information to credit reporting agencies to provide accurate information, to correct and update information, to provide notice of a dispute, to provide notice of closed accounts, and to investigate and report on any disputed information. See 15 U.S.C. § 1681s-2(a). Additionally, the statutory provisions set out the duties upon notice of a dispute from a credit reporting agency, including the duties to investigate and to report the result. See 15 U.S.C. § 1681s-2(b).

With respect to enforcement of these duties, the FCRA provides two individual rights of action: willful noncompliance, id. §1681n, and negligent noncompliance, id. § 1681o. These private rights of action, however, are limited to violations of Subsection (b) (post-notice duties) and are explicitly precluded from use in enforcing Subsection (a) (general duties). Id. 1681s-2(c). Instead, Subsection (a) is to be enforced by federal and state officials. Id. § 1681s-2(d); Gordon v. Greenpoint Credit, 266 F. Supp. 2d 1007, 1009-10 (S.D. Iowa 2003) (Pratt, J.).

## AMENDED COMPLAINT IS NOT FUTILE

The Eleventh Circuit noted the following with respect to Rule 15(a):

"The decision whether to grant leave to amend is committed to the sound discretion of the trial court. *Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618 (11th Cir. 1993). However, "'[d]iscretion' may be a misleading term, for rule 15(a) severely restricts the judge's freedom, directing that leave to amend 'shall be freely given when justice so

13

requires.'" *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 597 (5th Cir. 1991). This policy of Rule 15(a) in liberally permitting amendments to facilitate determination of claims on the merits circumscribes the exercise of the trial court's discretion; thus, "[u]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." Id. at 598."

*Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1994).

District Courts have only limited discretion to deny a party leave to amend the pleading. Thus, the court is constrained to allow a plaintiff leave to amend unless there are substantial contravailing reasons." *Grayson v. Kmart Corp.*, 79 F.3d 1096, 1110 (11th Cir. 1996) (citing *Espey*, 734 F.2d at 748 and *Dussouy*, 660 F.2d at 594). In determining whether to grant leave to amend, the court may consider undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and the futility of the amendment. Id.

## CONCLUSION

Wherefore, Plaintiff prays that this Court properly exercise its discretion and serve the interests of justice by granting Plaintiff's instant Motion, providing for the immediate filing of his Third Amended Complaint.

Respectfully Submitted,

_____
DEMETRIUS NICKENS
AS HIS OWN ATTORNEY
SUI JURIS

PO Box 931292
Norcross, Georgia 30003
404-952-7230
PLAINTIFF

## CERTIFICATE OF COMPLIANCE

Pursuant to Local R. 7 .1(D), this is to certify that the foregoing complies with the font and point setting approved by the Court in Local R. 5 .1(B). The foregoing COMPLAINT was prepared on a computer, using Times New Roman 14 point font.

*/s/ Demetrius Nickens*
DEMETRIUS NICKENS
PLAINTIFF IN SUI JURIS

## CERTIFICATE OF SERVICE

I hereby certify that I mailed the foregoing Reply to Defendants' Response to Plaintiff's Motion for Leave to file Third Amend Complaint to the Clerk of Court on April 21 , 2013. The CM/ECF system will automatically send email notification of such filing to the following attorneys of record:

**Barry Goheen, Esquire**
KING & SPALDING
1180 Peachtree Street, N.E.
Atlanta, GA 30309-3521
*Via Courts Electronic Noticing Service*
**Counsel for Defendant Equifax**

**Alan D. Leeth, Esquire**
BURR & FORMAN, LLP-ATL
171 17th Street, NW
Suite 1100
Atlanta, GA 30363
*Via Courts Electronic Noticing Service*
**Counsel for Defendant HSBC**

/s/ Demetrius Nickens
DEMETRIUS NICKENS
PLAINTIFF
*Sui Juris*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

**DEMETRIUS NICKENS**
    PLAINTIFF

Vs.

        Civil **1-13-CV-0333**

**EQUIFAX INFORMATION SERVICES LLC, ET AL**
    DEFENDANT

## ORDER GRANTING PLAINTIFF'S MOTION TO FILE THIRD AMENDED COMPLAINT

**UPON CONSIDERATION OF THE PLAINTIFF'S,** Motion for Leave to File Third Amended Complaint, it appearing that good cause having been stated, it is hereby this _____ day of _____, 2013, ORDERED, that the Motion be GRANTED and that the clerk accept the Plaintiff's Third Amended Complaint for filing, it is further, ORDERED, that the Defendants' file its responsive pleading to the Amended Complaint no later than 14 days from the date of this ORDERED.

    It is ordered this _____ day of _____, 2013

    Judge_____